

SM

**RECEIVED**

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JUL 06 2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| Elena Fedorova, *ProSe* Plaintiff | ) |
| | ) |
| Vs | ) Jury Trial Demanded |
| | ) |
| Bank of America, N. A. | ) **1:22-Cv-3486** |
| Brian Moynihan, Chair of the Board and CEO | ) **Judge Tharp** |
| Discover, Discover Bank, | ) **Magistrate Judge Gilbert** |
| Discover Financial Services | ) **Random Assignment** |
| Roger C. Hochschild, President and CEO | ) Judge: |
| Doe 1-10 Investment Banks and Hedge Funds | ) |
| Doe 1-100 FINTECH Companies | ) |
| | ) |
| | ) DEMAND FOR DECLARATORY |
| Blitt & Gaines, P.C. | ) AND INJUNCTIVE RELIEF; |
| Fred N. Blitt, Managing partner | ) RESTITUTION; DISGORGEMENT |
| Jan B. Gaines, Managing Partner | ) STATUTORY DAMAGES; |
| David Olefsky, Partner and CEO | ) ACTUAL DAMAGES; |
| Barbara Nilsen, Partner and CCO | ) TREBLE DAMAGES |
| Michael Starzec, Partner | ) EXEMPLARY DAMAGES; |
| Mark Bernacea, Associate | ) PUNITIVE DAMAGES |
| Kristine George, Associate | ) |
| Michael Wolf, Associate | ) |
| | ) |
| Innovis, Credit Reporting Bureau | ) Total $8 Million in damages |
| Experian, Credit Reporting Bureau | ) |
| Transunion, Credit Reporting Bureau | ) |
| Equifax, Credit Reporting | ) |
| | ) |
| The Consumer Financial Protection Agency | ) |
| The Securities and Exchange Commission | ) |
| The Federal Deposit Insurance Corporation | ) |
| The Federal Trade Commission | ) |
| Illinois Attorney Registration &Disciplinary | ) |
| Commission | ) |

## COMPLAINT

FOR VIOLATION OF THIRTEEN AMENDMENT; FORCE-PLACED SECURITIZATION; THEFT
OF SERVICES AND WAGES; BREACH OF CONTRACT; VIOLATION OF TRUTH OF LENDING
ACT 15 U.S.C. 1601 et seq ; VIOLATON OF FAIR DEBT COLLECTION PRACTICES ACT 15
U.S.C. §§1692-1692p; RACKET AND MAIL FRAUD UNDER RICO ACT 18 U.S.C.§1961 et seq.;
VIOLATION OF FAIR CREDIT REPORTING ACT; CONSPIRACY TO DEFRAUD; VIOLATIONS
OF UNIFORM ELECTRONIC TRANSACTIONS ACT (UETA) AND ESIGN ACT 15 USC 96

1

## JURISDICTION.

1.     This Court has jurisdiction to hear Fedorova's case which is based on Constitutional questions; violations of Federal laws; diversity jurisdiction over of Defendants per 28 U.S.C.§1331 and §1367; legal action against Federal Agencies, the Administrative Procedure Act, 5 U.S.C. §§ 702 *et seq* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

## STATUTE OF LIMITATION.

2.     Statute of limitation is current. All events are ongoing torts, all participants actively concealed and continue to conceal the real nature of Fedorova's transaction; refuse to provide her proof of the existence, and ownership of the alleged unpaid loan account due from Fedorova; and refuse to conduct any investigation despite Fedorova's numerous complaints to the Agencies.

## STANDING.

3.     Fedorova suffered and continue to suffer injuries in fact that are traceable to Defendant's conduct and that is highly likely to be redressed by a favorable decision in this matter, specially by ordering Preliminary Disclosures as adopted by this Court; and directing Agencies to do their jobs and conduct investigation about the real nature of Fedorova's transactions. Fedorova is resident of Illinois and suffered concrete injuries as a result of Defendants conspiracy to defraud her about the real nature of her transaction where she applied for credit cards loans but instead was involuntarily drafted into undisclosed to her securitization schemes and she was paid for performing valuable services – to wit: issue documents which were secretly from Fedorova used in an illegal scheme where information about these documents was securitized and sold to third parties on indefinite basis, thus resulting in unconscionable profits to BANA, Discover and undisclosed to Fedorova investment Banks who illegally sold her identity on the open markets, aka virtual slavery where Fedorova performed unpaid services as an Issuer of security

2

instruments to unjustly enrich undisclosed to her parties, at least $15 per $1 paid to her from unknown to her sources who forced Fedorova to return these commission as additional revenue masqueraded as "repayment of debt". Nobody from her alleged "creditors" has any account receivable for this transaction or suffered any damages.

4.      These transaction were falsely reported as "loans" to Credit Reporting Agencies who failed to investigate and remove these derogatory "accounts" from Fedorova's credit report even when she several times demanded to investigate and remove, in violation of Fair Credit Reporting Act. To add insult to the injury, BANA and Discover, along with undisclosed to her Does hired B&G lawyers who filed frivolous legal actions to collect alleged "debt" while Fedorova many filed numerous disputes with BANA, Discover, CFPB and B&G to validate it. Her demands to validate ownership and existence of this alleged "debt" were never responded on merits, which is a flagrant violation of FDCPA and RICO act.

5.      All parties owe Fedorova statutory duties; and duties of care and fair dealing. Fedorova has congressionally defined right to receive all demands and communication from debt collectors free of any false statements or false threats. E.G. Genova v. IC Sys., Inc. CV 16-5621, 2017 WL 2289289 at 3 (DNJ, May 25, 2017). Defendants relentlessly make false statements to Fedorova and even directly to the Court. See also *Bellwood v. Dwivedi*, 895F.2d.1521-27 (7th Cir.1990)

6.      Regulatory Agencies whom Fedorova contacted many times demanding investigation about existence and ownership of her alleged "debt" failed to conduct any investigation.

7.      As the result of all Defendants' unlawful, torturous and malicious conduct Fedorova suffered injuries, monetary damages, damages to reputation and extreme emotional distress defending herself from a frivolous and baseless claim filed by the parties who seek additional revenues on top of enormous profits based upon an extra-legal doctrine that allows anyone with

knowledge of a virtual debt (created only by claims) to seek enforcement and to exercise virtual administration, actual collection and actual enforcement of a virtual claim that does not exist in the real world. The property interest is actually intangible because the property itself is virtual rather than real. In fact, the intangible property interests is also illusory because it conflicts with our legal definition of debt. A debt cannot exist without a lender or creditor. And it cannot be enforced unless it still exists at the time of enforcement is claimed[1].

DEMAND  FOR MANDATORY INITIAL DISCOVERY.

8.     Fedorova requests this Honorable Court for an Order to disclose identity of any natural person who initiated her transactions with "BANA" and "Discover" and who issued instructions to administer, collect or enforce the alleged subject debt, including the business entity, if any, on

---

[1] Virtual debt is merely a cover story for hiding unconscionable profits on a transaction that is intentionally misrepresented as a loan instead of paying for services rendered. It is only by withholding the information that consumers are providing a service, that enables Wall Street securities brokerage firms to pretend that they have entered the lending marketplace. It is a cover story for withholding legally required disclosures of parties, profits, and consequences from a customer until long after they have accepted the false contract. Those firms that originate such transactions have no stake in the outcome of the virtual loan contract. It makes no difference whether the customer pays or does not pay. There is no loss if he doesn't pay and in fact, there is a gain because the Wall Street firms will take the proceeds of forced collections without ever recognizing it as income. Virtual debt is a cover story for hiding the fact that nearly every loan in America has been subject to a tidal shift that goes against the grain of anything we have ever believed, asserted, and enforced. There is no place in jurisprudence where a transaction is allowed to create an obligation where the counterparty has no stake in the outcome of the obligation. The existence of an unpaid obligation due from the consumer is a foregone conclusion. The similarity with slavery is striking. Both rely on the fact that it has operated so long it MUST be right. The new *sub silencio* doctrine is that the only thing that matters is that the consumer promised to make a payment and NOT whether he or she would have made that promise if the facts were known and NOT whether it is indeed representative of any underlying obligation. There is no interest in proof of loss or the existence of an injured party. It is all "presumed" because there is no reality to the claim except as a virtual claim. The entire landscape of finance has shifted to virtual interests that are increasingly exotic in nature. Judges and lawyers are only interested in whether the consumer stopped making payments with virtually no thought about whether the payments were still due or were ever due much less whether the named claimant exists or has any right, title, or interest in any promise of the customer.

4

whose behalf such instructions were issued; who hired B&G lawyers and who submitted reports to Credit Agencies. If Fedorova's alleged "loan" exists on books and records of the claimants who can prove it in Preliminary Discovery by providing her copies of her promise to pay (the Note) as recorded on BANA and Discover books and records, along with a certified copy of accounting Ledger from BANA and Discover financial officers, with wet-ink signatures, along with Sworn Affidavits from B&G lawyers George, Starzec, Wolf and Bernacea, Fedorova is willing to pay. If no such records exist in the financial books and records of BANA and Discover, why Fedorova has to pay? Real debts need to be paid. Virtual debts require no payment. If the lawyers representing the alleged creditor cannot supply Fedorova with a copy of the unpaid loan account receivable as it exists on the books and records of the alleged creditor, then it does not exist. Alleged "Billing Statements" are not a substitute for an accounting record of ownership and loss on an unpaid loan account receivable.

PARTIES.

9.      Fedorova is a Resident of the State of Illinois from whom Defendants attempted to collect an alleged "debt" and caused all other injuries. Fedorova is a customer under 15 UCS §1692a(3).

10.     <u>Bank of America, N.A.</u> (BANA) is a multinational investment bank and financial services holding company headquartered in Charlotte, North Carolina. BANA claims to be the alleged **current** "owner" of Fedorova's alleged "debt". BANA is publically traded and **sells** various "debt" "securities" to investors, which are purportedly backed by consumers "loans". BANA is a part of the biggest economic crime where they luring customers into executing documents that failed to comply with laws, fail to disclose the real terms of the deal, fail to adequately compensate and protect customers for their involuntary participation in an illegal unregulated securities scheme and file fraudulent collections to steal back money paid as wages.

5

11.  Brian Moynihan ("Moynihan") is BANA's CEO since 2010, who is in charge of all aspects of a BANA's operations and procedures, supervise and direct BANA's decision makers, govern operations such as lending requirements. Moynihan owes Fedorova duty of care and fair dealing; and compliance with all applicable statutes. Moyhihan breached his duties thus is liable to Fedorova, for violations of these duties and BANA's biggest economic fraud.

12.  Discover ("Discover", formerly Morgan Stanley) is the credit card brand. Most cards with the Discover brand are issued by Discover Bank which is owned by Discover Financial Services headquartered in Illinois. Discover claims to be Fedorova's alleged "creditor" and purported "Plaintiff" in case *Discover vs. Fedorova. 2021-M1- 100264* filed on January 6, 2021.

13.  Roger Hochschild ("Hochchild") is CEO of Discover answerable to the customers.

14.  Discover Bank ("DB") is the issuer of credit cards under Discover brand.

15.  Discover Financial Services ("DFS") is a parent company of Discover and Discover Bank. Since Fedorova does not know which of DFS chain of shell corporations is involved in her transaction, they will be referred as "Discover entities" or "Discover".

16.  Doe Investment Banks and hedge funds[2] are undisclosed to Fedorova stockbrokers who were most likely principals in Fedorova's transactions misrepresented to her as "loans".

17.  Doe FINTECT companies are referred to as servicers thus debt collectors, by the CFPB because that is who does the servicing. While Fedorova was actively deceived that she is dealing with BANA or Discover, she is most likely dealing with CoreLogic,Inc. Fiserv,Inc. or Black Knight, Inc. (formerly Lenders Processing Services, Inc, branch of Fidelity National Financial, Inc.) who operate an array of FINTECH companies, each performs separate services, such as printing and mailing "billing statements" with BANA and Discover names on it; rent P.O. Boxes

---

[2] Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." Sheets v. The Morning Call , 130 F.R.D. 34, 37 (E.D. Pa. 1990)

under names of BANA and Discover; collect Fedorova's payments and deposit them on a designated account of undisclosed bookrunner Investment Bank via complex money laundering scheme. Fedorova requests this Honorable Court for an Order for Preliminary Discovery to disclose identity of any natural person who initiated and issued an instruction to administer, collect or enforce the alleged subject debt, including the business entity, if any, on whose behalf such instructions were issued.

18.     Blitt & Gaines, P.C. ("B&G") is a debt collection law Firm, registered in Illinois who rents their name for a fee to unknown to them companies to collect alleged debt by filing "collection" cases with typed signatures of B&G lawyers, accompanied by fake, fabricated, and forged documentation. B&G lawyers do not know whom they are represent; have no contact with their alleged clients; have never spoken to any officer or employee of the named claimants; have not ever been retained or paid by the claimants; never received any instructions or information from the named claimant and do not conduct any due diligence about alleged "debt". B&G lawyers are not protected by "litigation privilege" since they do not have an attorney-client relationship.

19.     Fred N. Blitt ("Blitt") is a debt collector and B&G managing partner who is in charge of all aspects of a B&G operations and procedures, govern, supervise and direct B&G lawyers. Under the doctrine of *respondeat superior*, liability for a tort committed by an employee may be imputed to an employer without a showing that it was the employer's fault.

20.     Jan B. Gaines ("Gaines") is a debt collector and B&G managing partner who is in charge of all aspects of a B&G operations and procedures, govern, supervise and direct B&G lawyers and liable for all Fedorova's damages under the doctrine of *respondeat superior*.

21.     David Olefsky ("Olefsky") is a debt collector and B&G Partner and CEO who is in

7

charge of all aspects of a B&G operations and procedures, supervise and direct B&G lawyers. Olefsky provided evasive responds to Fedorova's Debt Validation Requests and complaints to CFPB trying to mislead her and CFPB regarding existence and ownership of her alleged "loan".

22.    Barbara Nilsen ("Nilsen") is a debt collector and B&G Partner and CCO who is in charge of all aspects of a B&G  operations and procedures, and supervise and direct B&G lawyers. She is liable for Fedorova's damages  under the doctrine of respondeat superior. On June 14,2022 Nilsen responded to Fedorova's complaint to CFPB where Nelsen lied to Federal authorities.

23.    Michael Starzec ("Starzec") is a debt collector and B&G Partner who supervise associate attorneys and allowed to use his name on pleadings furnished to B&G by undisclosed parties. In Fedorova's case Starzec's name was used on two Motions, while Stazec failed to validate his signature or any knowledge about information stated in these Motions.

24.    Mark Bernacea ("Bernacea" ) is a debt collector and B&G Associate who regularly appears in the Court and makes false statements about representation of his alleged "clients" with whom Bernacea has no contact; and existence, ownership, and status of the alleged unpaid loan account due from customers. In Fedorova's "collection case" Bernacea lied to Judge Derico that BANA is the current owner of Fedorova's alleged "debt", which is impossible since her transaction was a subject of BANA's securitization scheme.

25.    Kristine George ("George") is a debt collector and B&G Associate who rented her name for fraudulent collection case based on false statements about existence and ownership of alleged "debt" and about Fedorova's disputes; accompanied by fabricated and forged documents.

26.    Michael Wolf ("Wolf") is a debt collector and B&G Associate who rented his name for fraudulent collection case based on false statements about existence and ownership of alleged "debt" accompanied by fabricated and forged documents.

27.     Innovis ("Innovis") is the credit reporting division of CBC Companies and is considered

the fourth largest consumer credit reporting agency which is located in Pennsylvania. Innovis

owes Fedorova duties to investigate all information before it is posted on her credit report.

28.     Experian ("Experian") is an American–Irish credit reporting company with headquarters

in Dublin, Ireland. Experian owes Fedorova duties to investigate all information before it is

posted on her credit report.

29.     TransUnion, LLC ("TransUnion" ) is an American consumer credit reporting agency

collects and aggregates information on individual consumers. TransUnion is based in Chicago

Illinois but doing business from Pennsylvania. TransUnion owes Fedorova duties to investigate

all information before it is posted on her credit report.

30.     Equifax ("Experian" ) is an American multinational consumer credit reporting agency

headquartered in Atlanta, Georgia. Equifax owes Fedorova duties to investigate all information

before it is posted on her credit report.

31.     The Consumer Financial Protection Agency ("CFPB") is an agency of the United States

government responsible for consumer protection in the financial sector and "regulating the

offering and provision of consumer financial products or services under the Federal consumer

financial laws." 12 U.S.C. § 5491. CFPB's jurisdiction includes banks, credit unions, securities

firms, payday lenders, mortgage-servicing operations, foreclosure relief services, debt collectors,

and other financial companies operating in the United States. CFPB owes duties of care to

Fedorova. CFPB breached its duties when CFPB received and failed to investigate Fedorova's

numerous complaints where she demanded disclosures and documents to prove existence and

ownership of her alleged debt which caused Fedorova damages .

32.     The Securities and Exchange Commission ("SEC") oversees securities exchanges,

9

Securities brokers and dealers, investment advisors, and mutual funds in an effort to promote fair dealing, the disclosure of important market information, and to prevent fraud.

33.    The Federal Deposit Insurance Corporation (FDIC) is an independent agency created by the Congress to maintain stability and public confidence in the nation's financial system.

34.    The Federal Trade Commission (FTC) is an independent agency of the United States government whose principal mission is the enforcement of civil (non-criminal) U.S. antitrust law and the promotion of consumer protection. Collectively, The Agencies.

35.    Illinois Attorney Registration & Disciplinary Commission ("IADRC") operates under the authority of the Illinois Supreme Court, which has sole authority to regulate the admission and discipline of lawyers in Illinois. While IADRC is quick to discipline and disbar lawyers who represent customers, IADRC always turns a blind eye on banks' lawyers and specially on B&G illegal collections and fraud upon the Court and do not even require B&G lawyers to answer consumer complaints. As the result, B&G racket is blooming, without any control or supervision.

PREAMBLE.

36.    Today we are still living with the myth that the transactions with customers were loans, that the concealed risks absorbed by customers should not be compensated, and administration, collection, and enforcement of nonexistent accounts receivable should be allowed.   BANA, Discover, and other Wall Street Banks operate a giant criminal Ponzi scheme, which created 2006 crash resulted in over $31 Trillion bailouts to non-damaged parties. The level of Mayhem generated by the banks is virtually beyond human comprehension. As a reference point for the scope of their illegal activities: there is about $90 trillion in fiat currency worldwide. But the shadow banking market, which had zero in 1983, now is estimated by most analysts to be in excess of $1.4 quadrillion, or more than 15 times all the money in the world. According to

Comptroller's Report on Derivatives BANA sells "securities" which 15 times exceed their assets, while Goldman Sachs(who was likely the real party in Fedorova's transaction) sells "securities" 185 times exceeding their assets. That makes the banks who made a market in this "nominal" stuff treated as "cash equivalents" in a position far beyond the ability of anyone who wants to regulate them or otherwise keep their abuses in check. And the fact that much of the money that was siphoned out of the US economy without paying taxes is sitting in various off-shore locations makes control over the banks virtually impossible across political borders. With no control, the banks will not just do the same, they will escalate because that is what they do.

37.    It is already apparent that the availability of credit has lured workers into allowing their wages to be replaced by debt. At this point, the Wall Street banks are in a position where they could and no doubt will find ways to present incentives for US consumers to take on more "debt" **that in actuality is a wage for services rendered.** The service rendered by Fedorova is issuing the necessary paperwork to establish a reference data point against which investors place bets.

38.    The revenue from selling such bets is literally infinite. Meanwhile, Fedorova who was lured into such transactions without knowledge of the real transaction is lured into strategies that create the illusion of "loan"; delinquency, and default. All of this happens because Fedorova believed she was taking on debt went in fact she has become a partner in a business scheme in which Fedorova receive none of the profits and assume all of the risk of loss.

39.    The borrowed money was used by the Wall Street brokers to put money on the closing table of transactions. Then the sales of certificates were closed thus paying off the lenders to the brokers and leaving a hefty trading profit — because far less than the borrowed money was used.

40.    Customers' transactions were only a necessary expense or advance in order to justify the sale of securities that could be issued indefinitely precisely because there was no conveyance of

any right, title, or interest to any debt of any customers. If BANA, Discover, and Doe brokers could have figured out a way to get Fedorova to issue notes without paying her anything, they would have done so. But that proved impossible. So they did the next best thing — they forced Fedorova to pay back the advance paid to her as an incentive to sign "loan papers" without any loan account or lender. This completed the illusion that "loans" were being securitized. The reality is that there were no loans and nothing was securitized. So, BANA and Discover never loaned Fedorova any money and owned nothing except maybe servicing rights that might have been worth something if there was any owner of an account receivable with Fedorova's name on it. But no such person or entity existed. Thus the administration rights are strictly an illusion.

41.     Yet, BANA and Discover (or whomever used their names[3] on the letterheads) hired B&G lawyers to  appear in the Court  when they try to get the money back that they paid to Fedorova in exchange for starting a series of transactions in which unregulated securities were sold, on an infinite basis, to investors who were betting on future announcements of data performance by the issuer– and **lie non-stop** while none of the lawyers do not even know who is their actual clients – all instructions are provided by Black Knight, Inc., FiServ, Inc or CoreLogic, Inc.  All such assertions are false and all evidence of default is equally false. This is a for profit venture that succeeded by  deceit,  camouflage,  manipulation  and  fabrication  of  documents,  and  false testimony. Securitization has been the basis for capitalism for hundreds of years. But current "securitization" is a theft, not capitalism. The fact that victims do not really understand how they got scammed for long periods of time in which the perpetrators of the scam managed to conceal the information should not be an excuse for allowing the perpetrators to keep their ill-gotten

---

[3] Fedorova believes that the real undisclosed to her party in her transaction with BANA was Goldman Sachs; and with Discover it was  Morgan Stanley.

gains. Such schemes upset the balance of market forces and the rule of law. Correcting them must be the obligation of law enforcement and the right of any victim to seek redress in court.

## STATEMENT OF FACTS.

42.     Elena Fedorova is a customer who relies on representation of her counterparties, reasonably expects  that these transactions are lawful,  covered by consumer  protection laws such as TILA, FDCPA  and  overseen by the Agencies. In fact, Fedorova's transactions with BANA, Discover and Does and their  "lending" and "securitization" practices are not regulated by the Agencies due to loopholes in the laws created in 1999 which allowed Investment Banks to secretly enter lending market place and change is from legal to illegal when they revoked Glass Steagal and allowed the sale of certificates that were legally redefined as non-securities.

43.     In transaction with BANA Fedorova responded to online offer of a credit card which regularly appears as commercials on her computer screen.  Fedorova was confident that she submitted her application and personal information to BANA; it was received by BANA's responsible agent who approved her transaction and who opened  an account receivable where he/she recorded her Promissory Note and send her a credit card where BANA started to  fund her purchases from their funds and all transactions are recorded on BANA's accounting books .

44.     In transaction with Discover Fedorova received a promotional offer to open a credit card with Discover. Fedorova filled out and mailed her application to as she believed was  Discover.

45.     In reality, Fedorova does not know who were her real counterparties; who received her applications and personal information; and she was fraudulently induced into a force-placed securitization schemes operated by BANA, Discover and unknown to her Does.

46.     Fedorova, who  knew nothing about her role as an Issuer and the seller of security instruments,  had no benefit from that sale; or any disclosures about real nature about her

13

transactions. She started to receive documents which looked like billing statements, on Discover and BANA's letterheads, where she was instructed to mail her payments to someone's P.O. Boxes. All statements had toll-free phone numbers where Fedorova can call if she has questions. The illusion of "loan transaction" was complete. Fedorova had no suspicions until she discovered a Class Action case *Willard v. Bank of America, et. al* 2:16-cv-01199 which stated:

> *BANA has "engaged in a scheme whereby they issue credit cards to consumers and, then seek to collect the amounts allegedly due from each card holder's use of the credit card, despite the fact that BANA has sold, transferred, assigned or otherwise conveyed its beneficial interest in each consumer's credit card account to a trust as part of a financial transaction known as a credit card securitization.* **Having relinquished its beneficial interest, B of A no longer has a debt obligation owed to it by Plaintiff or the Class.** *" The complaint alleges very specific elements of the B of A "sale" process from account creation through securitization; a process that shows an account moving via "sale" from Bank of America to Bank of America Consumer Credit Services to Bank of America Funding LLC to Wilmington Trust Company. The complaint then alleges, "Wilmington Trust Company then underwrites a bond offering. The bonds are placed into tranches from senior debt to junior debt and each tranche has a certain amount of assets. Bank of America Consumer Credit Services still services the account by sending out bills and accepts payment, but Bank of America has given up ownership rights as required to Wilmington Trust Company, therefore Bank of America and its entities have given up its rights to sue its cardholders when they default on their debt."*

None of these provisions about securitization and sales of Fedorova's "loans" were disclosed to

Fedorova by BANA or Discover, which is a clear violation of TILA.

47.    Fedorova decided to obtain validation of her alleged debt from BANA and Discover whom she sent Debt Validation Request ("DVR") under FDCPA 15 U.S.C. §§1692-1692p. Fedorova specifically stated that this is not her refusal to pay, but demand to validate her debt and stressed out that BANA and Discover must disclose to her if this alleged "debt" was a subject of BANA and Discover securitization practices and sold or transferred to other parties.

48.    BANA and Discover failed to respond to Fedorova's DVR and refuse to answer if Fedorova's transaction was a subject of securitization as of today. Fedorova sent additional DVR, requesting copies of her Promissory Notes recorded on BANA and Discover books as assets; and a copy of a BANA and Discover general ledgers for her alleged "credit card"

account, as required under GAAP. These DVR were also ignored. Fedorova proceeded with an administrative Complaint with CFPB and informed BANA and Discover that she will be withholding her payments until BANA and Discover provide her validation of her alleged "debt" and send her full disclosures and supporting documents.

49.     BANA and Discover responded with robo-signed runarounds and provided Fedorova a pile of "billing statements" , which bear to repeat were generated, printed and mailed to Fedorova by unknown to her FINTECH companies. None of Fedorova's demands to validate this alleged debt were responded with any evidence of ownership.

50.     BANA and Discover[4] hired B&G law firm whose partner Olefski sent her absurd runaround where he informed Fedorova that use of credit card constitutes a contract; along with piles of "billing statements" from BANA and Discover.

51.     Fedorova made more attempts to obtain validation of her alleged "debt" from BANA and Discover, by sending them letters and filing complaints with CFPB, without accord.

52.     While this account was in dispute, on December 16, 2020 someone[5] hired B&G law Firm and filed robo-signed by lawyer George Complaint 20-M1-126767 *BANA vs. Fedorova* where George made following statements:

    a. This is an action for damages that are within the jurisdictional limits of the Court
    b. Defendant [Fedorova] applied and received a credit account [*not a loan*!] which is owned and administered by Plaintiff [ BANA]
    c. Defendant [Fedorova] breached the Agreement by failing to make periodic payments. [..] The entire balance is presently due and payable in full [ to whom?]
    d. Based on Plaintiff's [BANA] records, there are no unresolved billing disputes related to the Account.

---

[4] Fedorova does not know who in fact responded to her CFPB complaints, she believe it was done by unknown to her parties who used printed names of BANA, Discover and B&G lawyers. Similarly, she does not know who hired B&G lawyers.
[5] B&G lawyers do not know who are their clients since they communicate with someone via secured emails or websites who furnish to B&G Complaints with designated Plaintiffs and Motions which B&G lawyers present to Judges

53. The complaint was accompanied by robo-signed on September 18, 2020 Affidavit from Kathlena Edwards, in unknown capacity and without any contact information; and several billing statements as "evidence". George's allegations are blatant lies since this an action for revenue; Fedorova did not received any "loan account" but was paid for performing financial services as an issuer of securities ; and here are numerous disputes related to this Account. In fact, Fedorova does not know whose money was used to fund or create the illusion of funding the loan. So she does not know any of the facts governing consideration for the alleged loan contract — which is the key component for enforcement of any contract. She does not know whether her alleged debt ever existed or still exists or if so, to whom it is owed. She does not know if this claimant has been financially injured by the hole in her payment record. She does not even know if there is a hole in payment record because she does not know whether the claimed debt exists on the books and records of any business entity that is carrying it as a loan receivable. Any accountant can confirm that if there is no loan receivable there is no loan payable. The reason for all these counterintuitive twists and turns is simple: When investors paid for the certificates (issued in the name of implied entities) they were supplying the money to investment banks for the purpose of funding the origination and acquisition of the loan data arising from the execution of the note and other documents as the "loan." The investors were NOT purchasing any debt. In fact the certificates expressly disclaim any interest in any debt.

54. Fedorova appeared in the Court; contested billing statements and the Affidavit as hearsay; demanded lawyer George to validate her signature on the pleadings under UETA, and verify under Penalty of Perjury that all statements in this Complaint are true. Fedorova also filed a Counterclaim again BANA, which she now pleads to consolidate with this case. Fedorova's pleadings were responded by B&G partner Starzec who filed robo-signed Motion to Strike

Fedorova's Answer and Defenses and Dismiss her Counterclaim. Ex. 2. According to Starzec[6], the Complaint is based upon on a theory of account and billing statements and the Affidavit are not evidence, but an example how evidence should look like. Illinois is a fact pleading jurisdiction and the account must be real, not theoretical, as well as evidence. "Starzec" ignored Fedorova's demands for disclosures if her transaction was securitized and resorted to generic statements that the "securitization" is a legal investment vehicle regulated by the Federal Government, trying to portrait Fedorova as a conspiracist who "*spins a tale of Wall Street hidden motives*", which Fedorova pass to SEC, CFPB and FDIC to address for the Court.

55.     According to "Starzec, "*securitization of loan receivables is legal and regulated by FDIC*". None of BANA's "securities" sold to investors are "loans receivables" or any other assets. Office of Comptroller Report shows that BANA trades over-the-counter bets and contracts which 15 times exceed BANA's assets. If BANA sells its consumer's loans 15 times, which is plainly illegal –it results in a reasonable question: if BANA received x15 profits from Sales of Fedorova's loan which damages BANA suffered and which "ownership" it claims?

56.     "Securitization " is only a word with very little meaning. In the context of Wall Street, it is supposed to mean that assets are split up or collected and sold in pro-rata pieces to investors. BANA, Discover and other Wall Street convinced customers and investors that the substance of securitization meant the creation of a loan transaction and then the sale of that loan transaction and the financial expectancy of payment to multiple investors. But the securities brokerage firms never intended any of that. The real plan called for selling the "Loan" over and over again by giving attributes of the transaction different names. So in the end, if they paid $6000 and $2000

---

[6] Fedorova does not know who prepared Motions with typed signatures of Starzec . None of them validated their signatures. All pleadings are likely prepared and furnished to B&G by unknown to B&G third parties via secured emails or secure websites to present them in the Court.

to Fedorova for her financial services, to issue a security called "promissory Note", they would sell it for at least $90,000.00 and $30,000.00 or more, without compensating Fedorova plus collecting from her additional revenue, via her payments, fees and charges and thatever they can extort from her via Court. What they could never say, under their plan, was that they were selling a virtual loan with no value in lieu of a real loan consisting of a lender and an unpaid loan account. By suppressing the truth about the transactions that the Wall Street investment banks and securities brokers make all their money and defraud customers like Fedorova.

57.     While BANA and their lawyers stonewall Fedorova's questions about securitization and sales of her alleged transactions, they tacitly admitted that it was securitized, thus BANA cannot be a "current owner" of Fedorova's "debt" under any circumstances, because her alleged "obligation" was securitized and sold many times, legitimately or not.   B&G lawyer Bernacea appeared before Judges in Cook County Court and lied that BANA is a current "owner" of Fedorova'a alleged "debt" while repeatedly refused to answer Fedorova's question about securitization and never filed any requested by Fedorova documents –copies of her original Promissory Note and a copy of the accounting ledger, which Fedorova demanded many times. Bernacea also told Judge Derico that here are numerous unresolved billing disputes with Fedorova, which contradicts with George's statements that here are no unresolved disputes.

58.     Similar "collection" case was filed by B&G lawyer Wolf on behalf of Discover, which is even a bigger mystery since it appears that B&G lawyers do not even know about this case. According to lawyer Nelsen's respond to CFPB:

*A review of our records indicates that <u>Ms. Fedorova opened a Discover Bank credit card account</u> on April 4, 2019. The last payment on the account was received on August 2, 2019, in the amount of $50.00. After all payments and credits were applied <u>a balance remained due and owing</u>. On October 14, 2020, our office sent Ms. Fedorova our initial communication indicating our representation of Discover Bank. In response, <u>Ms. Fedorova filed a complaint requesting all communication in writing and validation of the account</u>. On November 2, 2020 we sent Ms.*

*Fedorova validation of the account including the balance, account number and monthly billing statements mailed to her address evidencing purchases and payments relative to her account. Our office closed Ms. Fedorova's account in our office and returned it to Discover Bank.*

59.     Which means that (1) here is no indication that Discover Bank opened any accounts receivable with Fedorova's name; (2) here is no indication to whom the balance was due and owing; (3) here is a dispute over this account where Fedorova demanded proof of ownership and disclosures about securitization. The balance, account number and monthly billing statements from FINTECT companies are not evidence of ownership; (4) B&G closed Mrs. Fedorova's account in their office and returned it to Discover Bank [at large].

60.     It is unclear when B&G "closed" Fedorova's account, but on January 6, 2021 someone filed illegal collection case 21-M1-100264, *Discover v. Fedorova*, electronically signed [forged] by B&G lawyer Michael Wolf, accompanied by electronically signed [forged] Affidavit from litigation support coordinator Danielle Grasso – while lawyer Nelson even did not mentioned this case in her respond to CFPB. Which creates a reasonable question – did B&G even knew about this case filed by someone who used lawyer Wolf's name on it? In the usual case where a loan is subject to claims of securitization, none of the above assumptions is true but if the presumptions are used they yield false results which results in forced collections in which the proceeds are used as revenue and not to pay down any debt. Legal presumptions are only supposed to be applied when the source is credible. Given the fact that the banks have admitted to fabricating millions of documents and have been paying hundreds of billions of dollars in settlements to investors, agencies and customers, it is very difficult to understand why judges are applying such presumptions from such untrustworthy sources. But they do and that is a fact.

61.     Fedorova repeat and reinstate her statements from paragraphs above; and add that Discover  also never provided any evidence of its ownership of Fedorova's alleged debt.

19

### FIRST COUNT FOR RELIEF: VIOLATION OF THIRTEEN AMENDMENT; FORCE-PLACED SECURITIZATION; INVOLUNTARY SERVITUDE; STATUTORY THEFT OF SERVICES AND WAGES
Against BANA, Moynihan, Discover Hochschild, and Doe Banks and Funds

62.     Involutary Servitude is when an individual works for another individual against his or her will as a result of force regardless of whether the individual is paid for the labor. The term *involuntary servitude* is used in reference <u>to any type of slavery</u>, for the satisfaction of debts. Two essential elements of involuntary servitude are involuntariness, which is compulsion to act against one's will, and servitude, which <u>is some form of labor</u> for another. All requirements met.

63.     Fedorova transactions appeared to her to be regular lending transactions. In fact, she was dragged into force-placed securitization schemes where Fedorova was paid for performing valuable financial services: issue her Promissory Note as a base of securities about which Fedorova knew nothing. She was induced to return her payments with "interest" and "fees" which left her with negative amortization while BANA, Discover and Does received profits from using Fedorova's services, without her knowledge or consent. None of it was disclosed to her and she never gave her consent to be an Issuer of securities or perform any services in a securities scheme that extinguishes the debt account entirely, which is a business scheme that bars the counterparty customers [here: Fedorova] from any profit or revenue and requires them to accept, without knowledge or consent, all concealed risks and losses.

64.     *Claim against BANA*: The payment to Fedorova under such circumstances was not a loan. It was a partial compensation [wage] to her for financial services and unknowingly accepting concealed risks and losses when BANA forcibly dragged Fedorova into their securitization where her identity is sold, to numerous parties, in various forms to generate enormous profits to BANA which were never disclosed to her, as well as the nature of her transaction. To add insult to injury, Fedorova was required to pay back the partial compensation [wage] she received, only

because she was fraudulently induced to think she was entering into a loan transaction. But "at the end of the day," there is no lender, no creditor, and no loan account. This is a new form of slavery where customers perform services to BANA, without their knowledge and consent; and their wages are stolen as additional revenue, on top of more revenues extorted in Court for fun.

65. *Claim against Moynihan*. Moynihan is perfectly aware about BANA's false flag securitization scheme where BANA forced Fedorova to perform for them financial services and to repay back the only compensation she received. Moynihan is liable to Fedorova for

violations of Thirteen Amendment; force-placed securitization and theft of services and wages.

66. *Claim against Discover entities*. Fedorova repeat her statements from above. Similarly, Fedorova was not borrowing money from Discover; she was getting paid for her involuntary services as an issuer of base instruments used for the "sale" of "Certificates" and other derivative products. So here is no loan and no loan account despite the issuance of the promissory note.

67. *Claim against Hochschild* . He is perfectly aware about Discover's false flag securitization scheme where Fedorova was forced to perform for them financial services and to repay back the only compensation she  received. Hochschild is liable to Fedorova for violations of Thirteen Amendment; force-placed securitization and theft of her services and wages.

68. *Claim against Doe Investment Banks and Hedge Funds*. Fedorova repeat her statements and adds that she could perform financial services for several undisclosed to her parties.

69. Fedorova got cheated out of compensation that she was entitled to receive but could not bargain for because she knew nothing about the true nature of the transaction. Neither BANA, Discover or Doe Banks and Funds nor any investor maintains a loan account receivable. They fake it through the use of FINTECH companies who act as "servicers" who collect Fedorova's money via P.O. Boxes . The goal is to prevent Fedorova from knowing that she is entitled to a

fair share of the securitization scheme; and receive from her unpaid financial services masqueraded as a "loan" and use force such as threats and extortion in the Court, via fraudulent Complaint and forged documents. Fedorova did not agree to perform unpaid financial services and being sold like a cow on the open market to various investors while BANA, Discover and Doe Banks collect from her money paid to for services performed. This is a classic example of contemporary slavery where individuals do not know that they are performing valuable unpaid services to a handful of Investment Bankers who lured them into fictitious "lending" which generated at least $15 dollars revenue to BANA per $1 paid to Fedorova as a wage plus received more revenues from Credit Default Swaps and now try to extort from Fedorova more revenue using Court system as a tool, for fun and profits.

70. CONCLUSION: Fedorova demands restitution; disgorgement of unlawfully collected from her money; FULL compensation for her services (at least 20% from all sales of her securitized identity on the open market, or $18,000); and treble; compensatory, exemplary and punitive damages for involuntary servitude, to prevent others from similar conduct.

## SECOND COUNT FOR RELIEF: BREACH OF CONTRACT
### Against BANA, Moynihan, Discover, Hochschild, and Doe Investment Banks

71. Credit Card Agreements are loans which is a label for a certain type of contract. There must be a meeting of the minds. In cases where there was no meeting of the minds, there is no contract. And if there was no meeting of the minds because one party to the alleged contract was hiding and did not disclose the real terms as required by laws, rules, and regulations concerning loan contracts make it is imperative that established existing remedies be allowed to Fedorova as a customer. Fedorova is a victim of a classic contract fraud and made unilateral mistake on the part of statutory required to be disclosed, including but not limited to:

   a. She did not know that she was doing business with an undisclosed investment bank doing business through a string of intermediaries.

22

b.  She did not know that the supposed loan transaction is being underwritten for the purpose of justifying sale of unregulated securities and not for purposes of justifying a loan.

c.  She did not know that there is an absence of any real party in interest that has a risk of loss — the essential balancing element of all contracts

d.  She did not know that the undisclosed revenue for the sale of securities vastly exceeds the amount of their transaction. At the moment she signed, she triggered revenue that erases all possible risk of loss and eliminates the need to establish a loan account receivable on the books of anyone.

e.  She did not know that it is their signature on purported loan documents that creates the illusion of a loan transaction thus triggering the undisclosed sale of securities (without which the "loan" would never have offered, much less occurred.

f.  Fedorova did not know that she was not a borrower but investor and participant in the sale of unregulated securities. She was entitled to know that and bargain for a fair share of the proceeds. The issuance of the note by Fedorova was based upon a universal error or mistake by all customers that they were purchasing a loan product which was not true.

g.  She did not know that there is nobody who is legally authorized to administer, collect or enforce the promise she made to make scheduled payments, to wit: the presumed authority to enforce arising from the alleged possession of the alleged original note leads to a false conclusion of fact. Such authority ultimate must come from the party who owns the underlying obligation as contained on their records as a loan account receivable. There is no such loan account receivable.

72.    The bottom line is that Fedorova did not get what she applied for and the investment banks did not pay money to her or on her behalf because they wanted to loan her money. They wanted to sell securities and they needed Fedorova to do it. **The fact that Fedorova received money and used it in financial transaction does NOT make it a loan.**

73.    *Claim against BANA*. BANA who had higher bargaining power, knew about the real nature of Fedorova's transaction but failed to disclose it to Fedorova, thus breached the Contract first since here was not meeting of minds. BANA was going into the transaction with Fedorova for launching a securitization transaction and not a loan transaction. BANA used false misrepresentation to lure Fedorova into a transaction about which she knew nothing.  Thus, BANA is liable to Fedorova for treble damages for contract fraud; restitution; disgorgement of illegally collected money  and other damages.

74.    *Claim against Moynihan.* Moynihan supervises and controls all BANA's business

practices and is perfectly aware about BANA's illegal "securutization" and failures to disclose customers, and Fedorova the real nature of their contracts with BANA. Moynihan is liable to Fedorova for treble damages for contract fraud; restitution; disgorgement of illegally collected money and other damages

75. *Claim against Discover Entities.* Fedorova repeat statements from above and add that Discover was going into transaction with Fedorova to obtain from her services for launching their securitization scheme, not a loan. Discover is liable to Fedorova for treble damages for contract fraud; restitution; disgorgement of illegally collected money and other damages

76. *Claim against Hochschild.* He supervises and controls all Discover 's business practices and is perfectly aware about Discover failures to disclose customers, and Fedorova the real nature of their contracts with BANA. Hochschild is liable to Fedorova for treble damages for contract fraud; restitution; disgorgement of illegally collected money and other damages

77. *Claim against undisclosed Doe Investment Banks.* Fedorova repeat her statements from above and add that here are many hiddent from her parties why were preying on her transaction and involuntary servitude, and these Does were perfectly aware about the real nature of their transaction with Fedorova; and acted unlawfully and in violation of UCC and common law. All Doe is is liable to Fedorova for treble damages for contract fraud; restitution; disgorgement of illegally collected money and other damages.

78. CONCLUSION: Fedorova entered into a contract Agreement where she expected to get a loan. BANA, Discover and Doe Investment Banks (who had implied contract with Fedorova) lied to Fedorova and entered into a different type of Agreement where they purchased from her financial services which they used in their securitization schemes. Fedorova, who still has no access to any records except "billing statements" from Doe FINTECH companies, did not know

about it while her counterparties, who had access to all information, were aware about the real nature of her transaction. BANA, Discover and Does breached their Contact with Fedorova and defrauded her, which deemed this contract as null and void. Fedorova is entitled for treble damages from each dishonest party, disgorgement of all money she paid up to date; and all other damages and legal costs.

### THIRD COUNT FOR RELIEF: VIOLATION OF TRUTH OF LENDING ACT
Against BANA, Moynihan Discover Entities, Hochschild and Doe Banks and Hedge Funds

79.     The Truth of Lending Act ("TILA") is designed to protect consumers from unfair lending practices. The law covers most kinds of consumer credit lending including credit cards and include the following practices on the part of lenders: unfair credit billing; unfair credit card practices; misrepresentations; failure to disclose necessary information about a loan. In the event that the lender failed to disclose any of the required terms listed above, the borrower has grounds to reclind their transactions and sue for money damages[7] and attorney's fees.

80.     *Claim against BANA*. BANA is obligated to make disclosures to Fedorova about the real nature of her transaction and all other necessary information about her transaction, specially about profits received by BANA from Fedorova's participation. BANA refused to make any disclosures to Fedorova about the real nature of her transaction, thus violated TILA and liable to Fedorova for $1,000 statutory damages; all other damages and legal costs.

81.     *Claim against Moynihan*. Moynihan is responsible for BANA's compliances with TILA and protection of the customers, here – Fedorova. Moynihan knows that BANA fails to comply with TILA and does not disclose to customers real nature of their transactions and BANA's revenues. Moynihan is liable to Fedorova for $1,000 damages and all other damages and costs.

---

[7] In 2018 CFPB fined Citi Bank $335 million for violations of TILA. Claim 2018-BCFP- 0003

82.    *Claim against Discover Entities.* Discover is obligated to make disclosures to Fedorova about the real nature of her transaction  and all other necessary information about her transaction, specially about profits received by BANA from Fedorova's participation. Discover refused to make any disclosures to Fedorova about the real nature of her transaction, thus violated TILA.

83.    *Claim against Hochschild.* Hochschild  is responsible for Discover's compliances with TILA  and protection of the customers, here – Fedorova. Hochschild knows that Discover fails to comply with TILA and does not disclose to customers real nature of their transactions andDiscover 's revenues. Moynihan is liable to Fedorova for all damages.

84.    *Claim against Doe Investment Banks and Hedge Funds.* Fedorova is entitled to know about all parties in her transaction and about real terms. None of it was disclosed to Fedorova, which is a violation of TILA.

85.    CONCLUSION: BANA, Moynihan, Discover Entities, Hochschild and Does violated TILA and owe Fedorova statutory damages, $1,000 from each liable party, plus rescission of both alleged "loans", exemplary damages, punitive damages; emotional distress damages costs of this legal action and attorney fees, which are available to *ProSe.*

### FOURTH COUNT FOR RELIEF: VIOLATON OF FDCPA
Against BANA, Moynihan, Discover Entities; Hochschild, Doe Investment Banks and Hedge Funds ; Doe FINTECH; B&G Law Firm; and lawyers Blitt; Gaines; Nilsen; Starzec, Olefski; George Bernacea and Wolf , jointly and individually.

86.    All Defendants are collecting alleged "debt" – without existence of this debt. Under FDCPA §807 A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. §1692e of the FDCPA provides as following: "*False and Misleading Representations: A Debt Collector may not use any false, deceptive of misleading representation or means of connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is in violation of*

26

*this section: [.] (2) The false representation of (A) the character, amount of legal status of any debt; or..(10) the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer.*" Collections are about restitution for an unpaid debt. The fundamental elements of a prima facie case in support of the remedy of collection consists of three things.

87.     *First,* is the existence of an unpaid loan account receivable. *Second,* the ownership of that unpaid loan account receivable by the party who is named as the claimant or plaintiff. *Third,* a financial loss is reflected in that unpaid loan account receivable. This third element is the key. **If there is no loss caused by the behavior of Fedorova there is no default and there is no cause for bringing a claim against Fedorova.**

88.     Fedorova never refused to repay her debt – IF it exists. BANA, Discover and B&G never provided Fedorova any proof that they are real creditors who currently own her obligation by providing her original documents and copies of account receivable where Fedorova's promise to pay is recorded. Under FDCPA Fedorova has a right to withhold payments until requested documents are provided to her and her alleged "debt" is validated, along with its ownership.

89.     All listed above Defendants violated FDCPA, never provided her any proof of existence or ownership of her alleged "debt" – and filed frivolous collection cases based on false statements and forged "documents" such as robo-signed Affidavits from Edwards in unknown capacity and Grasco (Discover's Litigation Support coordinator) and billing statements from FINTECH companies; and lied to the CFPB and the Court.

90.     Fedorova can only owe money to BANA and Discover **if her transaction was a loan.** But every loan has some basic common sense characteristics or attributes: (1) There is no other reason or intent to give Fedorova any money. (2) The transaction is legal — i.e., it complies with

all federal and state laws, rules, and regulations governing lending and servicing. (3) The transaction creates a loan account reflected on the general ledger of the lender as an asset receivable. (4) The lender has an actual risk of loss if scheduled payments are not received. (5) The lender has funded the transaction by using its own assets or its own credit, wherein the lender is liable for repayment of the funds loaned to the lender. (6) The lender owns the loan account receivable when the transaction cycle is complete. (7) The lender's business plan is to earn a profit through repayment of the loan with interest and other fees or, as is frequently asserted, the profit is earned through the sale of the loan. (8) If the loan originated with the intent to sell it in the secondary market, the intent is to receive payment in exchange for a conveyance of the underlying obligation.

91.    In the current iteration of securitization, BANA, Discover and Doe Wall Street bank found and launched the holy grail of investment banking: they underwrite the sale of securities and keep all of the proceeds. No longer acting as brokers, much less Lenders, they are creating, issuing, and selling "certificates" that were redefined in 1998-1999 as "Not Securities" and therefore not subject to regulation, but which could nonetheless be offered for sale and trading in wide distribution. The bottom line is that the securitization plan was created not to lend money to Fedorova but to multiply the dollars originally paid to start the first level of what was in actuality a pyramid scheme. The money paid to the Fedorova was in exchange for the issuance of the primary or base certificate or securities — the note.

92.    The revenue generated for the investment firms skyrocketed from and been underwriting fees of 15% to underwriting profits of 1500% giving apparent substance to the illusion that the transaction was a loan. The Achilles heel of this plan was of course that Fedorova had to agree to pay back the only consideration she was receiving to execute the primary or base securities. And

28

the only way Fedorova would do that is if she knew nothing about the true nature of the transaction and she was successfully deceived into thinking the transaction was a loan. Given all that, the inescapable conclusion is that Fedorova believed it to be a loan but that is not enough to make it a loan.

1. There was no reason to make a loan but there were plenty of reasons to sell securities.
2. The disclosure requirements and underwriting requirements contained in lending laws were violated to cover up what BANA, Discover and Doe securities firms were doing.
3. There is no loan account and there is no accounting ledger that reflects a loan account receivable. Nobody wanted that risk of loss.
4. There was no risk of loss to the originator because the transaction was structured as a warehouse loan but in substance, the transaction was a fee to Fedorova for service.
5. There also was no risk of loss to the investment firm (bank) because they were borrowing money to fund credit card transactions but repaying those loans with the much greater amount of money proceeds from the sale of certificates.
6. The goal was to create revenue and profits on an unprecedented level from the sale of certificates even though they were neither securities nor backed by any obligation— giving rise to the "factor of 10" payment scale that was used to compensate anyone who participated in this scheme, except Fedorova who received literally less than nothing once you deduct the principal and "interest" that is "owed" on a nonexistent loan account.
7. Anyone claiming rights to administer, collect or enforce based upon such purchase and sale is committing an act of deception. This explains why there is fraud bloom — the sudden appearance of hundreds of fabricated documents containing false information and forged signatures to make it appear that such account receivable exists.

93.     *Claim against BANA*. Our Court system is not designed for fun and profits by BANA and their lawyers who wants to promote a THEORY about accounts which do not exist in the real life because BANA intentionally destroyed such accounts to be able to sell information about non-existing debt as over-the-counter derivatives, over and over again. Collection of debt must be based on the real fact that the alleged owner of the debt who owns the account receivable suffered damages from my alleged non-payment and entitled to recover them. None of such damages or account receivable exists as well as damages. Case 20-M1-126767 is filed solely for profits to obtain additional revenue on top of pornographic profits received by BANA for trading Fedorova's identity on the open market. From the perspective of BANA, the money

paid out under the label of "loans" was simply a cost of doing business — the business bang the sale of securities, about $15 revenue per $1 paid to Fedorova to initiate this scheme. BANA had no interest, no risk of loss or any other stake in the outcome of any transaction that was falsely labeled as a loan transaction. BANA violated FDCPA when they demanded from Fedorova payments for non-existing debt, refused to validate existence and ownership of alleged debt; and filed frivolous collections based on false statements and forged documents. Thus, BANA must pay Fedorova $1,000 statutory damages plus all other damages.

94. *Claim against Moynihan*. Moynihan is responsible for BANA's compliance with FDCPA and liable to Fedorova for extortion of revenue of revenue by BANA under Moynihan's leadership, under glimpse of collection of non-existing "debt". Thus, Moynihan is personally liable to Fedorova under FDCPA and must pay her $1,000 plus other damages.

95. *Claim against Discover Entities*. Fedorova repeat paragraphs from above. Discover violated FDCPA when they demanded from Fedorova payments for non-existing debt, refused to validate existence and ownership of alleged debt; and filed frivolous collections based on false statements and forged documents. Discover is liable to Fedorova and must pay Fedorova $1,000 statutory damages plus other damages.

96. *Claim against Hochschild*. Hochschild is responsible for Discover 's compliance with FDCPA and liable to Fedorova for extortion of revenue of revenue under glimpse of collection of non-existing "debt". Thus, Hochschild is personally liable to Fedorova under FDCPA and must pay her $1,000 plus other damages.

97. *Claim against Doe Investment Banks and Hedge Funds*. Here are numerous parties which were not disclosed to Fedorova in her transaction, while all of them are obligated to comply with the law and make disclosures. None of these disclosures were made to Fedorova

while here are undisclosed Doe Banks and Funds who receive revenues preying in Fedorova's transaction masqueraded as a "debt". Each Doe is liable to Fedorova for violation of FDCPA.

98.     *Claim against Doe FINTECH companies*. Doe FINTECH companies are responsible for actual collection of Fedorova's money – without any disclosures to her. FINTECH companies mail her billing statements, rent P.O. Boxes, collect her payments and distribute them to undisclosed to Fedorova parties. Each FINTECT company is collecting debt, thus liable under FDCPA and all damages to Fedorova.

99.     *Claim against B&G Law Firm.* B&G Law Firm regularly collects "debt" which is purportedly "owed" to others. B&G presented to Judges documents relating to transactions with Fedorova which are fabricated with false information while Fedorova's opposition can never give a straight answer to questions about her presumed transaction or present any evidence about her alleged "debt" they try to collect. B&G is the collections company which is not allowed to continue collections procedures until after the debt is validated or disputed. B&G misrepresented that the alleged "debt" is currently owed and took an action which they are not permitted to take, in violation of FDCPA when they sought a judgement to acquire payments trying to extort revenue from Fedorova under glimpse to collect "damages" which BANA or Discover never suffered. B&G lawyers knowingly submitted false statements and false amounts of "damages", including false statements that here are no disputes about this account while Fedorova disputed this account and BANA and B&G failed to validate this "debt".

100.    B&G lawyers march into court with a printout of billing statements that were proffered as a "business record" even though the statement was NOT a record of any business conducted by the named Claimant. Through scripted by third parties arguments furnished to law firms via secured emails; and audacity the lawyers play into the bias of a judge by establishing that such

31

an injury was sustained, the named claimant has suffered the injury and that declaration of default required under statutes was perfectly accurate, just, and legal. In sum, B&G try to collect a non-existing "debt" which was never validated to Fedorova, in violation of FDCPA, thus liable for $1,000 statutory damages and other damages.

101. *Claim against lawyers Blitt; Gaines; and Nilsen.* These lawyers are partners of B&G Law Firm and regularly involved in collection of debt purportedly owed to others. Blitt, Gaines and Nilsen are responsible for all aspects of B&G business and their contacts with alleged "clients. Blitt, Gaines and Nelson owe Fedorova duties under FDCPA when they accept collection cases from unknown to them parties via secured websites while none of this "debt" is verified. Thus Blitt, Gaines and Nilsen are liable to Fedorova, each for $1,000 in statutory damages, other damages and legal costs

102. *Claim against lawyer Olefski.* Olefski is B&G partner and debt collector. Olefski responded to Fedorova's complaints with CFPB and failed to validate her debt and provide her requested documents such as her Promises to Pay (Promissory Notes) to BANA and Discover; and lied to CFPB about existence of Fedorova's alleged debt while Olefski never saw any documents which can prove BANA and Discover's ownership of Fedorova's alleged obligation. Olefski violated FDCPA and must pay Fedorova statutory damages $1,000, and other damages .

103. *Claim against lawyer George.* George is a debt collector who filed a fraudulent collection case on behalf of BANA based on false statements and forged documents. George lied to the Court about existence and BANA's ownership of Fedorova's alleged "debt" while George never seen any documents in support of her assertions. George lied to the Court that here are no open disputed in Fedorova's situation while here are numerous open disputes. George violated FDCPA and liable to Fedorova for statutory damages $1,000, plus other damages and costs.

104.  *Claim against lawyer Starzec*. Starzec is a debt collector who filed several Motions in Fedorova's "collection" case where Starzec tried to extort from Fedorova debt she does not owe Starzec does not know anything about existence and ownership of Fedorova's alleged "debt" and made numerous false statements about Fedorova

105.  *Claim against lawyer Bernacea*. Bernacea is a debt collector who appears in the Court, presented to Judges Complaint and Motions filed by George and Starzec and made false statements about existence and ownership of Fedorova's alleged "debt" while Bernacea does not know if this debt exists and does not even know who is his client since neither he or any other B&G lawyer do not have contact with their clients. Bernacea says that he represents the claimant BANA that has been named as Plaintiff . The fact that Bernacea has never spoken to any officer or employee of the named claimant does not stop him from asserting that he is the authorized legal advocate for the named claimant. He knows that he is going to rely entirely upon the "records" of payments shown on a report that is generated from an unknown source. He knows that he is going to use the "billing statements" instead of the required loan account and that he will resist any and all attempts or even court orders to produce the loan account. Bernacea then goes on to speak about his "client" even though he has not ever been retained or paid by the claimant. And he has never received any instructions or information from the named claimant. Bernacea does not know the identity of his client but he is good at bluffing and he is not shy to lie to judges.  Bernacea violated FDCPA and liable to Fedorova for $1,000 in statutory damages; all other damages and legal costs.

106.  *Claim against lawyer Wolf*. Wolf filed a fraudulent collection case 21M1100264 on behalf of  Discover where Wolf tried to collect from Fedorova non-existing debt. Wolf violated FDCPA and liable to Fedorova for $1,000 in statutory damages; all other damages.

107.    CONCLUSION: As the result of Defendants' unlawful conduct, Fedorova suffered from

monetary damages  since she already returned part of her commission; paid for Appearance to

defend a frivolous claim; incurred legal fees and expenses to file this legal action;  experience

feelings of frustration,  aggravation, hopelessness, annoyance, and other emotional distress and

request each  Defendants to pay her statutory damages; exemplary damages, punitive damages,

damages for emotional distress and for all legal costs.

FIFTH COUNT FOR RELIEF:  RACKET AND MAIL FRAUD UNDER RICO ACT
Against BANA, Moynihan, Discover Entities, Hochschild, Doe Investment Banks; Doe FINTECH; B&G
Law Firm; and lawyers Blitt; Gaines; Nilsen; Olefski; George Bernacea and Wolf

108.    RICO Act is a Federal criminal statute with a private right of action for civil remedies.

The plaintiff must demonstrate (1) the existence of an enterprise, (2) that the enterprise engaged

in or its activities affected trade or commerce, (3) that defendant was employed by, or associated

with the enterprise, (4) that he participated in the conduct of the affairs of the enterprise, and (5)

that he participated through a pattern of racketeering activity. All elements are met.

109.    18 U.S.C. §§ 1962(c), 1964(c)) provides for liability in civil suits brought by any person

injured 'in his business or property' by a RICO violation, with a compulsory award of treble

damages, costs, and attorneys' fees and makes it unlawful for 'any person' who is employed by

or associated with 'any enterprise' affecting interstate commerce to 'participate, directly or

indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

110.    Fedorova's situation is a text-book of classic racketeering activities and mail fraud. There

is no debt to pursue if there is no person or company that maintains an unpaid loan account

receivable. This has been true as long as there have been laws. The fact that payment has not

been received according to a schedule is not a default under current law unless it produces a

financial loss or injury arising from an unpaid receivable — not a "loss" arising from the loss of

expected revenue that is claimed to be unrelated to the purported "loan" transaction. The big lie

is that anything happened when in fact nothing happened. It started with the origination of the transaction with Fedorova when she received money under the false premise that the money paid to her was paid as part of a loan transaction. As a result of that false premise Fedorova is lured into signing conventional-looking "loan documents." What is missing is any statement or confirmation that the named lender ever loaned money to Fedorova. Up until the era of securitization, there simply was no reason for questioning whether the named "lender" was engaged in a loan transaction or something else. What else could it be? But now in nearly all such transactions the named "lender" was not engaged in the practice or effect of "lending". Fedorova entered into an unknown to her transaction with undisclosed to her parties who demand her to pay them some "debt". FINTECH companies, acting under names of BANA and Discover, mail her demands for payments which they direct to send to someone's P.O. Boxes where her money are collected by unkown to her parties for benefits of unknown to her beneficiaries. Everything is implied but never proven.

111.    When Fedorova requested validation of her alleged "debt" – these undisclosed parties hired B&G law Firm whom they furnished Complaints with BANA and Discover names as Plaintiffs; while stonewall all Fedorova's requests for disclosures and demand to ban Fedorova from responding their claims; conduct any discovery about damages suffered by alleged "Plaintiffs' or even contact their lawyers

112.    All elements of RICO Act are met: (1) that defendants BANA, Discover, Doe Banks; FINTECH companies and B&G lawyers (2) through commission of two of the enumerated predicate acts, (3) which constitute a "pattern" of (4) "racketeering activity," (5) directly or indirectly participates in the conduct of (6) an "enterprise," (7) the activities of which affect interstate or foreign commerce, and that (8) plaintiff was injured in his business or property by

reason of such conduct. As the result Fedorova was robbed from her money; services; wages and financial reputation and now has to spend enormous amount of money, time and efforts to defend a baseless claim for revenue dressed as "collection of debt" which nobody can prove. revenue filed by racketeers with legal licenses B&G lawyers.

113.   *Claim against BANA*.  BANA pretended to be Fedorova's creditor while BANA never loaned Fedorova any money and does not own her alleged "debt" which BANA try to extort. BANA sends Fedorova correspondence with demands for payments, thus use mail as extortion tool. BANA violates RICO and liable to Fedorova for treble damages, plus other damages

114.   *Claim against Moynihan*. Moynihan is responsible for all BANA's operations, including collections of non-existing debt (which is BANA's revenues on top of profits from sales of securities backed by Fedorova's identity), thus Moynihan is the head of the criminal enterprise which is involved in interstate transactions who use mail as extortion tool. Moynihan violated RICO Act and liable to Fedorova $18,000 in treble damages plus other  damages and legal costs.

115.   *Claim against Discover Entities*. Discover pretended to be Fedorova's creditor while Discover never loaned Fedorova any money and does not own her alleged "debt" which Discover try to extort. Discover  sends Fedorova correspondence with demands for payments, thus use mail as extortion tool. Discover   violates RICO and liable to Fedorova for treble damages, plus other damages

116.   *Claim against Hochschild*. Hochschild is responsible for all Discover's operations, including collections of non-existing debt (which is Discover's's revenues on top of profits from sales of securities backed by Fedorova's identity). Hochschild is the head of the criminal enterprise which is involved in interstate transactions who use mail as extortion tool. Hochschild violated RICO Act and liable to Fedorova treble damages plus other  damages and legal costs.

117. *Claim against Doe Investment Banks and Hedge Funds.* Here are about 10-12 undisclosed to Fedorova securities brokers (who call themselves Investment Banks; and various hedge funds who buy purported "default debts", derivatives, credit default swaps and other junk based on Fedorova's identity who profit from this criminal enterprise preying on Fedorova. Each Doe must be disclosed and found liable to Fedorova treble damages and other damages.

118. *Claim against Doe FINTECH Companies.* Here are several undisclosed FINTECH companies who print and mail Fedorova billing statements, rent P.O. boxes in post offices where Fedorova is directed to send her payments; collect her money and deposit them on account of unknown to Fedorova parties via complex money laundering scheme. FINTECT Does are engaged in a classic racketeering scheme and use mail as extortion tool, thus liable to Fedorova.

119. *Claim against B&G Law Firm.* B&G Law Firm is publicly known as a group of racketeers with legal licenses who are swamped with complaints from defrauded and abused customers. In Fedorova's case B&G poses as a "debt collector" for unknown to B&G parties, lie to the Court, send Fedorova unjustified demands for money and file forged documents to extort from Fedorova money she does not owe. B&G are classic racketeers, acting as a part of criminal enterprise, who use mail as an extortion tool. B&G is liable to Fedorova and must pay her treble damages; and other damages and legal costs.

120. *Claim against lawyers Blitt; Gaines; Nilsen; Olefski; George Bernacea and Wolf.* Lawyers Blitt, Gaines, Nilsen, Olefski, George, Bernacea. Fedorova repeat and reinstate paragraphs from above and adds that B&G and their lawyers play a very important part in this racketeering activities by presenting false collections to the Court and extort money from the crime victim Fedorova.

121. CONCLUSION: As the result of Defendants' unlawful conduct, Fedorova suffered from

monetary damages since she already returned part of her commission; paid for Appearance to defend a frivolous claim; incurred legal fees and expenses to file this legal action; experience feelings of frustration, aggravation, hopelessness, annoyance, and other emotional distress and request each Defendants to disgorge illegally extorted from her money; pay her treble damages; exemplary damages, punitive damages, damages for emotional distress and for all legal costs.

SIXTH COUNT FOR RELIEF: VIOLATION OF FCRA
Against BANA, Discover, Innovis, Experian, TransUnion, Equifax

122. The FCRA governs the behavior of consumer reporting agencies, also called "credit bureaus," and the businesses or individuals that report information to the consumer reporting agencies (CRAs). The CRAs compile this information into Fedorova's credit report. CRAs do not perform the investigation or performs it incorrectly. The Consumer Financial Protection Board is doing a deep dive into both debt collection and reporting under the FCRA. Apparently, someone woke up to the fact that reporting "agencies" (none of them are governmental) are indeed required to perform both due diligence and an investigation when the "debtor" challenges a negative credit report. Here is the quote from the latest CFPB bulletin.

2.2.1 CRC duty to conduct reasonable reinvestigation of disputed information The FCRA requires that a CRC must conduct a reasonable reinvestigation of disputed information to determine if the disputed information is inaccurate whenever the completeness or accuracy of any item of information contained in a consumer's file is disputed by the consumer and the consumer notifies the CRC directly, or indirectly through a reseller, of such dispute.8 *In several reviews of CRCs, examiners found that CRCs failed to conduct reasonable investigations of disputes in multiple ways. Examiners also found that rather than resolving disputes consistent with the investigation conducted by the furnisher, which in many instances would have required correcting inaccurate derogatory information and replacing it with accurate positive information, CRCs simply deleted thousands of disputed tradelines. Examiners also found that CRCs failed to conduct reasonable dispute investigations when they failed to review and consider all relevant information submitted by the consumer in support of their disputes.* After identification of these issues, CRCs were directed to cease violating the FCRA's dispute investigation requirements. [e.s.]

123. In practice what this means for consumers who partake of the twisted financial products offered under cover of false labels is that if Fedorova submit a contest to the credit reporting agencies with an appropriate summary and exhibits and state the nature of the contest and the reasons for it, the CRA must conduct a deliberate investigation to determine whether or not it is true. If the "furnisher" is unable to establish the accuracy of the report the furnisher must withdraw it or the CRA must take it down.

124. Fedorova many times submitted disputes to BANA, Discover, Innovis, TransUnion, Equifax and Experian demanding to provide her proof of accuracy of reported information. The putative "Creditors" were unable to corroborate their claims for rights to administer, collect and enforce the alleged underlying obligation — despite being contractually bound to do so (FCRA, and bound by the statutory duty to do so (FCRA, FDCOA, RESPA).

125. BANA, Discover, Innovis, TransUnion, Equifax and Experient never validated reported information and CRAs did not removed it from Fedorova's credit reports.

126. *Claim against BANA*. BANA furnished false information to all CRAs which BANA knew was false and yet refused to remove this information which violated FCRA and caused Fedorova damages. Thus, BANA is liable for $1,000 statutory damages and all other damages. BANA must remove this false information from ALL CRA's – including parallel databases operated by Black Knight, Inc.; CoreLogic, Inc. and FiServ, Inc. where they store customers' personal data – without disclosing this source of information to customers.

127. *Claim against Discover Entities*. Discover furnished false information to all CRAs which Discover knew was false and yet refused to remove this information which violated FCRA and caused Fedorova damages. Discover is liable for $1,000 statutory damages and other damages.

128. *Claim against Innovis, Experian, TransUnion and Equifax*. Each Agency accepted

unverified information furnished to them by electronically signed methods, without ANY supporting documentation which can prove existence, ownership and status of alleged debt. Each Agency refused to conduct even minimal investigation and obtain basic documents or wet-ink signed Affidavits with the full name of financial officer from whom The Agencies receive information about Fedorova's alleged "debt". Each Agency refused to remove unverified records from Fedorova's credit report. Thus, each Agency is liable for $1,000 statutory damages ($4,000 total) plus other damages. Each Agency must provide Fedorova verified information by requesting documents from responsible financial officers of each furnisher; or remove derogatory entries since the alleged "loan accounts" has been eliminated by Wall Street investment banking strategies.

129. CONCLUSION: BANA, Discover, Innovis, TransUnion, Equifax and Experian violated FCRA and each liable to Fedorova for $1,000 statutory damages, other damages and legal costs.

SEVENTH COUNT FOR RELIEF: CONSPIRACY TO DEFRAUD.
Against BANA, Moyhihan, Discover Entities; Hochschild, Doe Investment Banks and Hedge Funds; Doe FINTECH companies; Blitt&Gaines, P.C., lawyers Blitt, Gaines, Nelson, Olefski, Starzec, George, Bernacea, and Wolf

130. When in 1990th Wall Street Stockbrokers created a scheme how to steal trillions from Investors and trillions from customers, it required all Investment Banks to "cooperate" – aka conspire and establish a chain of intermediaries to make it extremely difficult to link it to Investment Bank who is actually run a particular securitization scheme. This is separation of functions occurred for the sole purpose hiding the Investment Bank, concealing its role, and making it difficult to pierce through corporate veils in order to enforce liability for violations of lending and servicing statutes. At all times the Investment Banks act through a series of sham conduit intermediaries wherein lawyers make false representations and expect to be protected by litigation immunity. In fact, most functions such as printing and sending billing statements and

40

preparing "complaints" is done by Artificial Intelligence "(AIIM) which is heavily robotized, so no human beings involved. Money are collected by third party companies like Exela Technology, Transcentra Inc and its branch Regulus LLC from various P.O. Boxes rented in post offices who have lockbox agreements with Black Knight, Inc, FiServ,Inc. or CoreLogic, Inc.or likewise and laundered via complex money laundering scheme for the benefit of undisclosed Investment Bank.

131. Thus, while BANA and Discover names are used on letterheads of "billing statements", "letters" and Complaints as "creditors" and "Plaintiffs" – here is most likely different stockbrokers who received Fedorova's money using BANA and Discover names as placeholders.

132. This crime would not succeed without support from the Credit Bureaus (all of which are related to major Investment Banks); lawyers who receive legal fees for renting their names to be used on documents prepared by undisclosed FINTECH companies; and Government Agencies who fail to conduct any investigation in exchange of laughable "settlements" . These practices are extremely damaging for Main Street customers who are mercilessly robbed by Investment Banks who generated enormous profits from selling customers' securitized identities to Investor.

133. *Claim against BANA*. BANA is involved in the scheme of conspiracy to defraud Fedorova and steal from her wages, services and financial reputation. BANA could be possibly involved as Investment Bank in Fedorova's transaction where BANA deceptively obtained from Fedorova signed documents used in their securitization scheme which generated enormous profits for BANA but here is a great deal of possibility that BANA was not Fedorova's counterparty and merely provides its name as a cover up for another Investment Bank and receive fees for its participation as co-conspirator in the biggest economic crime. Here is no single document in Fedorova's transaction, including fraudulent collection case, which is coming

41

from BANA. Everything is robo-signed and prepared by various FINTECH companies.

134.    *Claim against Moynihan.* BANA is a merely s name of a legal entity which is operated by human beings who make executive decisions. Mounihan is the head of BANA who is making executive decisions and is personally responsible for BANA's illegal securitization practices; racket and conspiracy to defraud Fedorova and other customers. Thus, Moynihan is jointly and severally liable to Fedorova for all damages in his conspiracy to defraud her.

135.    *Claim against Discover Entities.* Discover conspired with other undisclosed parties and with B&G lawyers to defraud Fedorova and steal from her services, money and financial reputation. Thus, Discover is jointly and severally liable to Fedorova.

136.    *Claim against Hochschild.* Fedorova repeat her statements from above and add that Hochschild is personally liable for all executive decisions by Discover entities to participate in conspiracy to defraud Fedorova and steal from her services, money and financial reputation.

137.    *Claim against Doe Investment Banks and Hedge Funds.* Fedorova repeat her statements from above and add that Doe Investment Banks and Hedge Funds are most likely the real parties in her transaction and illegal collection and entered into conspiracy agreements with BANA, Discover and B&G lawyers to defraud Fedorova and steal from her services, money and financial reputation.

138.    *Claim against Doe FINTECT companies.* Fedorova repeat her statements from above and add that FINTECH companies are real servicers who print and mail Fedorova billing statements, rent P.O. Boxes where they collect Fedorova's money and launder them for the benefit of Doe Investment Banks; hire B&G lawyers via secured websites of emails; and participate in conspiracy to defraud Fedorova and steal from her services, money and financial reputation. Since FINTECH are actual Servicers, they have

42

139.   *Claim against Blitt&Gaines, P.C., lawyers   Blitt, Gaines, Nelson, Olefski, Starzec, George, Bernacea, jointly and individually*. B&G and its lawyers are participants in conspiracy to defraud Fedorova and help to steal from her money and damage her financial reputation. Based on Fedorova's situation and numerous customers complaints, (Ex. 3) B&G are not involved in actual collections activities or preparation of legal documents filed with the Court – except provide their names to undisclosed to them third parties who actually handle this extortion racket in Courts and directly from Fedorova. Bernacea, who appears in the Court, relentlessly lies to Judges about existence and ownership of alleged "debt" which Bernacea never seen. Thus, B&G and its lawyers are liable to Fedorova for conspiracy to defraud her.

140.   CONCLUSION: This amazing crime would not be possible without conspiracy agreements between participants who agreed to cover for each other to deceive Fedorova and steal from her services and money paid for these services, which caused Fedorova damages.

## EIGHT COUNT FOR RELIEF: VIOLATION OF UETA AND ESIGN ACT
### Against  Defendants BANA, Discover, George, Olefski and  Stazec only

141.   UETA apply to transactions related to business, commercial (including consumer) and governmental matters.   Section 4 states that the Act "...*applies to any electronic record or electronic signature created, generated, sent, communicated, received, or stored*".

142.   ESIGN compliance is critical, as the failure to comply could not only result in a technical violation of law, but also other major issues. Numerous laws and regulations require the providing of disclosures to the consumer. Under UETA and ESIGN , if electronic signatures are disputed, the Signor must provide a wet-inK signed Affidavit stating that this signature was attached by him/her or authorized  by him/her. All listed above Defendants used electronic signatures on their correspondence, pleadings and filed robo-signed Affidavits – but never validated any of them, despite Fedorova's numerous demands.

143. *Claim against BANA*. BANA must provide to Fedorova and file with this Court a wet-ink signed Affidavit from each employee who furnished information to Credit Agencies, filed responses to Fedorova's complaints with CFPB and who furnished documents to Blitt&Gaines lawyers stating their positions with BANA and confirm their personal knowledge about submitted information, and BANA's ownership of Fedorova's alleged debt, along with a certified copy of Fedorova's Promissory Note and general ledger for her account receivable.

144. *Claim against Discover Entities*. Discover must provide to Fedorova and file with this Court a wet-ink signed Affidavit from each employee who furnished information to Credit Agencies, filed responses to Fedorova's complaints with CFPB and who furnished documents to B&G lawyers stating their positions with Discover and confirm their personal knowledge about submitted information, and Discover's ownership of Fedorova's alleged debt, along with a certified copy of Fedorova's Promissory Note and general ledger for her account receivable

145. *Claim against lawyer George*. George [whose electronic signature was used in the Complaint case 20-M1-126767) must provide Fedorova and file with this Court her wet-ink signed Affidavit where George will verify, under penalty of perjury, that she personally reviewed all information in this Complaint, verified this information with her client's financial officer (state the name of the officer whom George contacted to verify information) and all statements in the Complaint are true and correct; and she personally signed it with her electronic signature.

146. *Claim against lawyer Wolf*. Wolf [whose electronic signature was used in the Complaint in case 21-M1-100264) must provide to Fedorova and file with this Court his wet-ink signed Affidavit where Wolf will verify, under penalty of perjury, that he personally reviewed all information in this Complaint, verified this information with his client's financial officer (state the name of the officer whom Wolf contacted to verify information) and statements in the

Complaint are true and correct; and he personally signed it with his electronic signature.

147. *Claim against lawyer Olefski*. Olefski's electronic signature was used on responses filed with CFPB. Lawyer Olefski failed to verify his signature thus violated UETA and ESign Act. Olefski must submit to Fedorova and file with this Court his wet-ink signed Affidavit where Olefski confirms that he reviewed documents proving existence and ownership of Fedorova's debt; and all statements in his responses were verified and prepared by him.

148. *Claim against lawyer Starzec*. Starzec's electronic signature was used on two Motions filed with this Court where Starzec made false statements about status of Fedorova's alleged debt Starzec violated UETA and ESign Act when he refused to validate his signatures on both Motions. Starzec must provide Fedorova and file with this Court his wet-ink signed Affidavit where Starzec will verify, under penalty of perjury, that he personally reviewed all information in this Complaint and his Motions, verified this information with his client's financial officer (state the name of the officer whom Starzec contacted to verify information); the statements in the Complaint and Motions are true; and he personally signed it with his electronic signature.

### NINTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
Against All Defendants.

149. Like millions of other customers, Fedorova has been trying to get one simple answer to one simple question: What is the current status of any unpaid loan account receivable due from her? And for years she had failed to get any response that answered the question. If any unpaid account receivable exists on the books of any person or company Fedorova is willing to pay it. But if it is not there, then why should anyone pay it? And if it is not there, then what is being done with the money received by undisclosed third parties from Fedorova payments?

150. The fact that payment has not been received according to a schedule is not a default under current law unless it produces a financial loss or injury arising from an unpaid receivable — not

a "loss" arising from the loss of expected revenue that is claimed to be unrelated to the purported loan transaction. Wall Street cannot and should not have it both ways. Either those revenue sources are related to the consumer transactions or they're not. If they are not related, then they have no financial loss arising from nonpayment and thus no claim for payment. If they are related, then it should have been disclosed and the undisclosed revenues and profits must be offered or paid to the Fedorova, at least in part. Holding Fedorova responsible for loss of revenues from schemes dependent upon the sale of securities is contrary to the law and the public interest. Allowing those participants to continue their predation on Fedorovato generate even more revenue is unconscionable and unconstitutional. For the state or Federal government to deprive Fedorova of her money and financial reputation there must be a claim that is recognized at law. No such claim exists unless there exists a claimant who has suffered actual or imminent financial loss derived from the subject of the transaction. The subject of the transaction is either a loan or it is a securities scheme with a loan component. There is no loan component if there is no loan account with an unpaid balance. Yet data reports are presented in administrative proceedings, court proceedings, correspondence, and notices that fail to identify or even allow inquiry into the existence or status of an unpaid loan account receivable.

151. CFPB, SEC, FDIC and FTC ("The Agencies") were chartered to protect financial consumers and Investors from abuse, fraud, and other illegal practices. If there is a legitimate reason why no person and no company will answer that question, then what is that reason? If there is no legitimate reason why no person or company will answer that question, then why does the CFPB, SEC, FTC and FDIC leave it to individual consumers to shoulder the entire burden of revealing illegal behavior? Each complaint filed by Fedorovas with CFPB was shoveled back in her face by the Agencies, where she had to deal with the same absurd runarounds filed by the

parties against whom Fedorova complained, without any meaningful responses and without ANY actions from the Agencies. Fedorova's specific question arises from experts that concluded that all securitization players have been paid in full through the sale of securities. The sole basis for any claim, right, title, or interest to her money arises from the production of a payment history that is neither prepared by any named servicer nor from data they have input or processed. They neither collect nor disburse money. Their "reports" are neither records nor reliable. And yet the Agencies continue to accept responses from them as though they were a creditor or representative of a creditor. They are not. Worse, despite receiving tens of thousands of complaints, the CFPB, has refused to investigate or publish any factual findings relating to false claims of sale and securitization of my debt.

152.    FDIC continues to regulate and promote securitization of ASSETS while FDIC must know that <u>Wall Street current securitization practices is sales of information about assets</u>. Investment securities brokers converted themselves into a printing press for hypothetical money by securitizing imagination. Any hypothetical event, movement or data can be securitized. Anything can be an asset class just because some investment bank says so. They created exchanges where their hypothetical money could be exchanged for real money leaving them with the real money and everyone else holding a hologram of an empty paper bag. Everyone is playing the game because the money generated from such activity is enormous. And the fact that there is a constant risk component of total collapse does not bother them — because the management of the entities involved is not personally liable for losses or liabilities of the eternity they directed to participate; and Agencies are instructed to turn a blind eye to all crimes.

153.    The portfolios are nonexistent because the loan accounts are wiped out in securitization. The entire house of cards is built on the idea that they can lie and fabricate documents to create

the appearance of ownership and rights to administer, collect and enforce a loan account that does not exist anywhere on their books. And they evade accountability under the Federal Truth in Lending Act or the Securities Exchange Acts. Because they say so they are NOT lending money nor are they issuing securities. The results are staggering. And the disclosure to consumers and investors is nonexistent.

154.    The SEC and FDIC must be regulating these transactions because the investment banks are evading regulation through claiming an exemption that defines their financial product as a private contract and not a security subject to regulation by the agencies. But they still label the financial products as an "asset backed security." It does not take a legal genius to know that they can't have it both ways. Either it is a security or it is not. The stumbling block here is that the certificates have been subject to an administrative determination that they are not subject to regulation, pursuant to the exemptions that became law in 1998 and 1999. Even a casual reading of the indentures on the IOUs and prospectuses reveals that the holder of the IOU has no claim on any collection from customers, nor any contingent claim relating to the enforcement of any debt. These IOUs are covered in window dressing that appear to satisfy the requirements of the 1998 exemption because a loan is a private contract and there's not a security that could be regulated by the SEC. But established case law clearly shows that the SEC is charged with the responsibility of looking at the substance of the transaction and not just the form. In any case where the investment by the investor is based on a passive receipt of income, revenue or profits, it is a security. The IOUs promise one thing, and even that promise is discretionary on the part of the investment bank. It is a security whose sale is used to pay back other lenders to the investment bank that funded payments to customers [here: Fedorova]  in exchange for the issuance of written instruments that were a component of the IOU certificates

48

that were securities. Fedorova believed she was buying a loan product when in fact she had been drafted into becoming a co-issuer of a security that is sold to investors. While the sale of the falsely labeled loan documents appears to be a loan, it does not result in the existence of a lender or loan account receivable — even though Fedorova were convinced, through false representations, that there is full compliance with lending laws.

155. The continued posture of the CFPB, SEC, FDIC, and FTC in failing to address gross procedural and substantive irregularities and, illegal conduct based upon completely false premises and extra-legal business structures has produced a gross shift of wealth from Main Street to Wall Street. Wall Street firms are in the business of selling securities and collecting a commission for their services. Under the current scenario, these firms have turned underwriting fees on their head. Instead of receiving 15% commission fees, they receive at least 1200% of the transaction. The transaction allows them to control the flow of money without any legal ownership, thus avoiding detection and prosecution for violations of many laws governing the sale of securities, loan products, and "servicing" without any underlying loan account receivable to enforce. CFPB , SEC, FDIC, FTC are intentionally avoiding their mandate to protect the country the economy, and consumers specifically (in the case of the CFPB). In fact, one could argue that the institutional bias has caused dilution of the currency by allowing the private sector to issue "cash equivalent" unregulated securities. The net effect of the current Wall Street "innovations" has been a hard sell of personal contact, correspondence, and advertising designed to get consumers to take on more debt so Wall Street can sell more securities. The basic fundamental elements of a loan transaction have been destroyed without any notice or information provided to consumers who utilize various debt products. **Consumers don't know that the designated "lender" (i.e., virtual creditor) has no stake in the outcome of the**

**transaction. They don't know that the goal is not to profit from interest on loans but rather the sale of securities. They don't know that the proceeds from the sale of securities completely pay off all participants, and lenders several times over.** And so they can't be said to have accepted those undisclosed terms. And yet, everyday consumers believe they're bound by those terms, and the courts enforce them — a phenomenon that is completely based upon institutional bias that produces inaccurate and misleading information about the presumed existence of enforceable loan account receivable that do not exist on the accounting ledgers of any company. The current institutional bias interferes with the basic mandates of many federal and state agencies and even law enforcement. The CFPB regularly receives inquiries and complaints from customers seeking to identify any person or company that maintains an unpaid loan account receivable due from them to that person or company. The answer is never forthcoming because there is no such person or company. Yet the CFPB continues to treat the ambiguous and illusory responses from the participants in securitization schemes and foreclosure schemes as adequate to address the complaint. The CFPB is thereby producing a distortion of economic realities in order to sustain policy decisions that were unsupportable when made even if they were excusable. The result is that the bogus claim gets to be fully litigated taxing the ability, resilience, and emotional stability of the consumer victims of this practice. In plain language, they must wait until the end of litigation to win whereas such claims in the context of other civil claims would be dismissed with prejudice at the outset. *This produces a form of legal extortion. Either the consumer pays $5,000 more or less to persist in litigation against a bogus claim or they lose their money and their financial reputation. The goal of the collectors is to litigate and steal money from customers for fees paid to all collection participants and the rest goes to the securitization players. No loan account is ever satisfied because none exists.*

156.    Investment Banks receive enormous profits preying in Fedorova where sales of securities are not the only tip of the iceberg of revenue for BANA, Discover and Doe Banks. They profit from (1) sales of securities to investors; (2) collecting payments from Fedorova for non-existing debt; (3) sales of derivatives and other junk "securities" which derive their "value" from original certificates; (4) collect insurance profits from CDSs ; (5) collect additional revenues from illegal collections where they hire lawyers like B&G whom they furnish Complaints and forged documents to be presented to the Courts who do not even ask lawyers where are copies of Promissory Notes these lawyers want to enforce. Lawyers weaponized their litigation immunity and lie to Judges whom they present forged documents furnished to them by undisclosed parties. IARDC, who suppose to promote integrity of legal profession, apparently told to tow the line. They cover for all crimes committed by Banks' lawyers – while often attack and disbar those lawyers who represent customers. Here are over 170 (!) Consumer's complaints filed against B&G – all are ignored by IARDC; and B&G  and their lawyers continue their racketeering activities, despite numerous legal actions and hundreds if not thousands consumers' complaints.

157.    Based on all consumer  complaints posted online, it is oblivious that B&G are not the real parties in all collections, but merely provide their names, legal licenses and litigation immunities as a cover-up for someone else. In Fedorova's case B&G lawyers demand Judges to prohibit Fedorova from contacting them directly, which is a very unusual demand for  legitimate  debt collectors. In other complaints, on 04/15/22 a customer offered to settle a debt for $1,250 – but B&G responded that they had no chance to even look at this offer, which is again, a very unusual practice for a legit debt collector. On 04/04/22 someone tried to dispute collection  – and was forced to listen a  pre-recorded voice mail which nobody could verify for him. Another client, on 03/07/22 said that B&G did not applied his settlement money from 11/26/2021 and told this

person that B&G don't have these money although they were picked up by B&G employee.

158. All these complaints are evident that B&G are fake "debt collectors" and NOT involved in any actual "collection" practices but merely rent their names for a fee to someone else who orchestrate this scam; and delegate B&G lawyers [here: Mark Bernacea] to appear in the Court and relentlessly lie to Judges about everything, including their "representation" of alleged "clients" whom B&G does not know; as well about all allegations in complaints. In other words, commit blatant fraud upon the Court; perjuries and racket on daily basis.

159. WHEREFORE, Plaintiff respectfully request that this Court enter a judgment in her favor and grant the following relief:

A. Compel BANA and Discover Defendants to disclose if Fedorova's transaction was a part of their securitization schemes. "Yes" or "No".

B. Compel BANA and Discover Defendants to disclose if any part of Fedorova's transaction was sold to investors after it was securitized. How many times it was sold? Compel to list all securities or any other financial products (including Credit Default Swaps and sales of alleged "default debt") resulted from Fedorova's transaction . State each derivative based on Fedorova's transaction which was sold and profits from these sales.

C. Compel BANA and Discover to disclose if they received any insurance payments such as Credit Default Swaps to *cure of any default*. If yes, how much was CDS payments?

D. Compel BANA and Discover to disclose which bank account were prior payments received and who controlled that bank account. On what general ledger of what company is the claimed debt appearing as an asset receivable of that company?

E. Compel BANA and Discover to produce to Fedorova a certified copy of her Promissory Note as recorded on BANA and Discover's general ledgers and copies of these ledgers, with wet-ink

signed Affidavits from financial officers who received Fedorova's payments and deposited it on BANA and Discover's ledgers.

F. Compel BANA, Discover and B&G to disclose identity of any natural person who issued

G. instructions to administer, collect (including from P.O. Boxes) or enforce the alleged subject debt, including the business entity, if any, on whose behalf such instructions were issued.

H. Compel BANA and Discover to disclose what is the date on which the named claimant received ownership of the underlying debt? What person or entity did not receive money as a result of the claimed default? On what dates has the named claimants issued any payments to third parties whose contractual rights to such payments were in any way related to payments from Fedorova?

I. Compel BANA and Discover to disclose the name and contact information of the officer(s) or employee(s) of the named claimant who is in charge of accounting and finance for the named claimant. What is the name and contact information of the officer or employee of the named claimant who is the custodian of records relating to the underlying debt, payments received and payments disbursed that were in any way related to the underlying debt, payments made by Fedorova , or payments received by third parties (possibly investors).

J. Compel BANA and Discover to describe source and the amount of the remuneration and compensation received by the named claimants in connection with the creation, administration, collection or enforcement of the subject underlying debt.

K. Compel BANA and Discover to describe dates and names of the lockbox contract(s) maintained with third parties for the collection of Fedorova's payments relating to the subject loan.

L. DECLARE that Fedorova's transaction was not a loan but a payment (wages) for her services performed to undisclosed to her parties which were illegally extorted back from her via deceit

M. DECLARE that Fedorova is entitled to receive adequate compensation for her services, 18-25%

from all revenues generated to Defendants similar to oil/gas industry payments to land owners.

N. DECLARE that Defendants' legal actions against Fedorova are without merits and unlawful and must be dismissed with prejudice, expunged from Cook County Court records and from Fedorova's credit reports;

O. COMPEL Defendants to return Fedorova all illegally collected from her money [disgorgement] and adequately compensate her for services, based on amounts of revenue generated by her participation as an Issuer of securities instruments.

P. Compel SEC, CFPB, FDIC and FTC to conduct full investigation about existence and ownership of Fedorova's alleged "debt" against BANA, Discover, B&G and its lawyers, Innovis, TransUnion, Equifax, and Experian and provide Fedorova reports about these investigations.

Q. Compel Innovis, TransUnion, Experian and Equifax to conduct investigation about existence and ownership of Fedorova's alleged "debt" and immediately remove all derogatory information from her credit report until all information is validated with evidence such as accounting ledger.

R. Compel IARDC to investigate B&G Law Firm and their lawyers; demand them to produce proof of authority to represent BANA and Discover as their alleged "clients"; and copies of wet-ink Affidavits from each B&G lawyer who is involved in Fedorova's cases that they personally prepared Complaints and all Motions; and information in these Complaints and Motions is verified, true and correct. If no such proof is provided, compel IARDC to initiate Disciplinary Actions and disbar every B&G lawyer who is involved in this scam; and order B&G to cease and desist their criminal activities.

E. Award Fedorova all damages and reasonable costs and attorneys' fees as authorized by law; Grant such further relief as may be just and proper.

Respectfully submitted,
Elena Fedorova

July 6, 2022

54

SERVICE LIST:

| | | |
|---|---|---|
| Bank of America, N. A.<br>100 North Tryon Street.<br>Charlotte, NC 28255 | Brian Moynihan, CEO<br>100 North Tryon Street.<br>Charlotte, NC 28255 | Discover<br>2500 LAKE COOK ROAD<br>RIVERWOODS, IL 60015 |
| Roger C. Hochschild, CEO<br>2500 LAKE COOK ROAD<br>RIVERWOODS IL 60015 | Discover Bank<br>502 E. Market Street<br>Greenwood, Delaware 19950 | Discover Financial Services<br>2500 LAKE COOK ROAD<br>RIVERWOODS, IL 60015 |
| Blitt & Gaines, P.C.<br>775 Corporate Woods PKW<br>Vernon Hills, IL 60061 | Fred N. Blitt, partner<br>775 Corporate Woods PKW<br>Vernon Hills, IL 60061 | Jan B. Gaines is a Partner<br>775 Corporate Woods PKW<br>Vernon Hills, IL 60061 |
| David Olefsky, Partner<br>775 Corporate Woods PKW<br>Vernon Hills, IL 60061 | Barbara Nilsen, Partner<br>775 Corporate Woods PKW<br>Vernon Hills, IL 60061 | Michael Starzec, Partner<br>775 Corporate Woods PKW<br>Vernon Hills, IL 60061 |
| Mark Bernacea, Associate<br>775 Corporate Woods PKW<br>Vernon Hills, IL 60061 | Kristine George, Associate<br>775 Corporate Woods PKW<br>Vernon Hills, IL 60061 | Michael Wolf, Associate<br>775 Corporate Woods PKW<br>Vernon Hills, IL 60061 |
| Experian Information<br>Solutions, Inc.<br>955 American Lane.<br>Schaumburg, IL 60173 | Transunion<br>555 W. Adams Street,<br>Chicago IL 60661 | Equifax<br>5750 Old Orchard Rd,<br>Skokie, IL 60077 |
| Consumer Financial<br>Protection Agency<br>1500 Pennsylvania Ave. NW<br>Washington, DC 20220 | Securities and Exchange<br>Committee<br>100 F Street, Northeast,<br>Washington, DC 20549 | Federal Deposit Insurance<br>Corporation<br>300 S Riverside Plz Ste 1700,<br>Chicago, IL 60606 |
| Federal Trade Commission<br>230 S Dearborn St Ste 3030,<br>Chicago, IL 60604 | Innovis<br>250 E Broad St<br>Columbus, OH, 43215-3708 | |